IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL ALAN CHRISMAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV-04-1226-L |
| | ) |
| MIKE MULLINS, | ) |
| | ) |
| Respondent. | ) |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In 1999, Oklahoma dramatically altered its laws through enactment of a statute called "Truth in Sentencing." Under the statute, persons convicted of certain crimes had to serve at least 85% of their sentences in prison. The Petitioner, Michael Chrisman, pled *nolo contendere* on February 22, 2005, on a charge involving first degree burglary. The state district court accepted the plea, sentencing Mr. Chrisman to imprisonment for ten years. With the conviction, Mr. Chrisman had to comply with the new statutory requirement for service of at least 85% of the sentence in prison.

According to the Petitioner, the trial court had failed to ensure voluntariness of the plea. Mr. Chrisman sought leave to withdraw the plea with the assistance of Mr. Charles Henry and Mr. Anthony McKesson. According to the Petitioner, both attorneys were ineffective in handling the motion to withdraw. The Petitioner's claims are invalid, and the Court should deny habeas relief.

Proposed Findings of Fact

I.   Mr. Chrisman was not told by his attorneys that Oklahoma's 85% rule was inapplicable.

II.   Mr. Henry did not tell Mr. Chrisman or imply that he would likely make parole within the first 8½ years of the sentence.

Proposed Conclusions of Law

I.   <u>Applicable Standards</u>

    A.   <u>Standard of Review Over the State Court's Decision</u>

The standard for habeas relief varies with Mr. Chrisman's claims.

<u>Ineffective Assistance on the Part of Mr. Henry</u>

The Oklahoma Court of Criminal Appeals did not address the merits of Mr. Chrisman's claim of ineffective assistance on the part of Mr. Henry. As a result, the federal district court should use its independent judgment in the resolution of this claim. *See Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002) ("If a claim was not decided on the merits by the state courts (and is not otherwise procedurally barred), we may exercise our independent judgment in deciding the claim." (citation omitted)).

<u>All Other Claims</u>

The Oklahoma Court of Criminal Appeals did address the merits of the remaining habeas claims. Summary Opinion Denying Certiorari, *Chrisman v. State of Oklahoma*, Case No. C-2002-412 (Okla. Crim. App. Mar. 25, 2003) (voluntariness of the plea); Order Affirming Denial of Post-Conviction Relief at p. 2, *Chrisman v. State of Oklahoma*, Case No.

PC-2004-681 (Okla. Crim. App. July 30, 2004) (ineffective assistance of appellate counsel). These claims were rejected. Summary Opinion Denying Certiorari at p. 2, *Chrisman v. State of Oklahoma*, Case No. C-2002-412 (Okla. Crim. App. Mar. 25, 2003) ("we find that the plea was knowingly and voluntarily entered"); Order Affirming Denial of Post-Conviction Relief at p. 2, *Chrisman v. State of Oklahoma*, Case No. PC-2004-681 (Okla. Crim. App. July 30, 2004) ("As for Petitioner's claim that he was denied effective assistance of appellant counsel, the record does not support this claim.").

The state appellate court's decisions are subject to limited review here. *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998) (citations omitted). For example, on legal issues, habeas relief is unavailable unless the state court had "reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case." *Sallahdin v. Gibson*, 275 F.3d 1211, 1221 (10th Cir. 2002).

B.   Elements of the Habeas Claims

Ineffective Assistance of Counsel

For a claim of ineffective assistance, the Petitioner had to show that the attorney's performance was constitutionally deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also United States v. Houston*, 103 Fed. Appx. 346, 351 (10th Cir. June 30, 2004) (unpublished op.) ("Because 'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel,' it follows the

same test applies to a counsel's representation on a motion to withdraw a guilty plea." (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985))).

Failure to Ensure Voluntariness of the Plea

On habeas review, the federal district court conducts limited review over the state court's steps to ensure the voluntariness of the plea. The Tenth Circuit Court of Appeals has explained:

> [O]n federal habeas review we determine the adequacy of a state court plea hearing under the due process clause of the Fourteenth Amendment by inquiring whether the defendant entered the plea "voluntarily and with a complete understanding of the nature of the charge and the consequences of his plea."

*Miles v. Dorsey*, 61 F.3d 1459, 1471 (10th Cir. 1995) (citations omitted).

II.   Oklahoma Truth in Sentencing Act

For offenses committed on or after March 1, 2000, persons convicted of first degree burglary had to serve at least 85% of any prison sentence before they could become eligible for parole. *See* Okla. Stat. tit. 21 § 12.1 (2001). Mr. Chrisman's offense occurred after the statutory requirement had become effective. Joint Stipulations at p. 2 (July 5, 2005).

III.  Nondisclosure Regarding Limitations on Parole Eligibility

Alleging a failure to disclose the 85% requirement, Mr. Chrisman challenges the voluntariness of his plea and asserts that his legal representation was ineffective.

A.      Voluntariness of the Plea

A plea of *nolo contendere* must be voluntary under the federal constitution. *See Miles v. Dorsey*, 61 F.3d 1459, 1465-66 (10th Cir. 1995). But a plea is not rendered involuntary by the failure to disclose Oklahoma's 85% rule. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in federal courts." (citations omitted)); *United States v. Gutierrez*, 839 F.2d 648, 652 (10th Cir. 1988) (*per curiam*) (holding that the trial court's failure to inform the defendant regarding his parole eligibility would not justify withdrawal of a plea based on "voluntariness grounds" (citation omitted)).

B.      Misadvice about Parole Eligibility

Gross misadvice about parole eligibility can render legal assistance ineffective and invalidate the plea. *See Beavers v. Saffle*, 216 F.3d 918, 925 (10th Cir. 2000) (ineffectiveness of counsel); *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (involuntariness of the plea). But an attorney's failure to inform an accused of restrictions on parole eligibility "does not amount to ineffective assistance of counsel." *McGuire v. Cowley*, Case No. CIV-95-59-R, slip op. at 27-29 (W.D. Okla. Apr. 27, 2000) (unpublished report and recommendation by magistrate judge), *adopted* (W.D. Okla. May 30, 2000) (unpublished

order by district judge),[1] *appeal dismissed*, *McGuire v. Cowley*, Case No. 00-6229 (10th Cir. July 3, 2001); *see also Varela v. Kaiser*, 976 F.2d 1357, 1358 (10th Cir. 1992) (stating that the Sixth Amendment does not encompass "'collateral aspects of the prosecution'" (citation omitted)).[2]

Proposed Determinations on Mixed Questions of Law and Fact

I.      Ineffective Assistance of Counsel

Neither Mr. Henry nor Mr. McKesson was ineffective in his representation of Mr. Chrisman. *See Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) ("[w]hether a petitioner's claim satisfies *Strickland's* two-part test is a mixed question of law and fact" (citation omitted)).

II.     Adequacy of the Record for Voluntariness of the Plea

The trial court satisfied its constitutional duty to ensure the voluntariness of Mr. Chrisman's plea. *See Marshall v. Lonberger*, 459 U.S. 422, 431-32 (1983) (voluntariness of a plea involves a question of federal law, but implicates questions of fact).

---

[1]     In *McGuire v. Cowley*, the issue involved a requirement that the defendant had to serve at least one-third of the sentence before he became eligible for parole. *See McGuire v. Cowley*, Case No. CIV-95-59-R, slip op. at 27 (W.D. Okla. Apr. 27, 2000) (unpublished report and recommendation by magistrate judge), *adopted* (W.D. Okla. May 30, 2000) (unpublished order by district judge), *appeal dismissed*, *McGuire v. Cowley*, Case No. 00-6229 (10th Cir. July 3, 2001).

[2]     Restrictions on parole eligibility involve "collateral" consequences of a *nolo contendere* plea. *See Holmes v. United States*, 876 F.2d 1545, 1549 (11th Cir. 1989) ("parole eligibility is a collateral rather than a direct consequence of a guilty plea" (footnote omitted)); *Hill v. Lockhart*, 731 F.2d 568, 570 (8th Cir. 1984) ("[t]he details of parole eligibility are considered collateral rather than direct consequences of a plea" (citations omitted)), *aff'd*, 474 U.S. 52 (1985)); *Strader v. Garrison*, 611 F.2d 61, 63 (4th Cir. 1979) (stating that parole eligibility is considered "an indirect and collateral consequence" of a guilty plea).

Discussion

In part, Mr. Chrisman claims that the trial court had failed to ensure voluntariness of the plea. According to the Petitioner, Mr. Henry and Mr. McKesson compounded the error through ineffective assistance in the effort to obtain leave to withdraw the plea. The federal district court should reject all of the claims.

I.   Claims Involving Ineffective Assistance of Counsel

All of the ineffective assistance claims involve the motion for leave to withdraw the plea of *nolo contendere*.[3] These claims are invalid, factually and legally.

Mr. Chrisman alleges that both attorneys should have sought withdrawal of the plea based on Mr. Henry's advice preceding entry of the plea. The Court should reject this allegation.

Prior to the evidentiary hearing, Mr. Chrisman alleged that he had been told by Mr. Henry that the 85% requirement did not apply.[4] This version was supported with an affidavit

---

[3]   In his opening brief, Mr. Chrisman disavowed any claim against Mr. Henry as trial counsel. Brief in Support of Habeas Corpus at p. 4 (Sept. 29, 2004). Instead, Mr. Chrisman based his claim against Mr. Henry solely on perceived inadequacies in the motion for leave to withdraw the plea. *Id.* Mr. McKesson entered an appearance in the state court action only after Mr. Chrisman had moved for leave to withdraw the plea. *See* Brief in Support of Habeas Corpus at p. 7 (Sept. 29, 2004).

[4]   Reply to Respondent's Response and Supplemental Habeas Claim with a Colorable Showing of Factual Innocence at p. 5 (allegation by Mr. Chrisman that he had been "coerced by Mr. Henry's representation that petitioner would not have to serve 85%"), p. 8 ("appellate counsel should have raised, that trial counsel [had] coerced petitioner into pleading guilty by assuring petitioner he would not have to serve 85% in order to get him to plead to a crime he is convinced he is not guilty of"), p. 9 ("Mr. Henry misinformed petitioner prior to the plea that petitioner would not be required to serve 85% of any sentence negotiated in return for a plea of nolo contendere"), p. 14 (Mr. Chrisman's statement that Mr. Henry had said "that he had an agreement with the State and that he

by Mr. McKesson, who reported that Mr. Henry had acknowledged telling Mr. Chrisman that the 85% requirement was inapplicable. Respondent's Evidentiary Hearing Exhibit 4(B) at p. 2 (July 12, 2005). The Respondent insisted that Mr. Henry had told Mr. Chrisman about the applicability of the 85% requirement. Supplemental Response to Petition for Writ of Habeas Corpus at p. 2 (Nov. 4, 2004).

At the evidentiary hearing, the Petitioner's version of events changed. There Mr. Chrisman acknowledged that Mr. Henry had not told him that the 85% requirement was inapplicable.[5] Instead, Mr. Chrisman's theory at the evidentiary hearing was that Mr. Henry had not said whether the statute applied. Evidentiary Hearing Transcript at pp. 259-61, 311 (July 13, 2005). The failure to do so, according to Mr. Chrisman, constituted ineffective assistance and rendered the plea involuntary. *Id.* at p. 261.

Mr. McKesson's testimony was also substantially different from his affidavit. According to the affidavit, Mr. Henry admitted that he had told Mr. Chrisman that the 85% requirement was inapplicable. *See supra* pp. 7-8. But at the evidentiary hearing, Mr. McKesson testified only that he had been told by Mr. Henry that the 85% requirement was

---

would not be required to serve 85%") (Nov. 19, 2004).

[5]  At the evidentiary hearing, Mr. Chrisman insisted that he had always "been consistent and never been inconsistent that [he] [had] never [been] told by Mr. Henry that that 85 percent would apply to [himself]." Evidentiary Hearing Transcript at p. 140 (July 12, 2005). But prior to the evidentiary hearing, Mr. Chrisman repeatedly asserted that he had been told by Mr. Henry that the 85% requirement did not apply. *See supra* note 4. Thus, in closing argument, counsel for the Petitioner acknowledged that Mr. Chrisman had been inconsistent in his statements about the advice given to him. Evidentiary Hearing Transcript at p. 312 (July 13, 2005).

inapplicable. *See infra* note 6. Mr. McKesson did not address whether he had been told by Mr. Henry what was said to Mr. Chrisman.[6]

---

[6] Mr. McKesson recounted two conversations with Mr. Henry. The first conversation was described as follows:

> Q. Do you remember where you were when you discussed this with Mr. Henry?
>
> A. In the office. I believe it was in his office, but it could have been in mine. But my recollection is that I went to him and said, "I have this concern as far as what it is that he was told." And my recollection is that Mr. Henry said that he did not believe that based upon the time in which the crime had been committed, that it would have fallen under this statute requiring 85 percent at that time.

Evidentiary Hearing Transcript at pp. 235-36 (July 12, 2005). The second conversation was also described by Mr. McKesson:

> Q. Now, did there come a time when, right around the time when you were making these affidavits, that you had another discussion with Mr. Henry as to your affidavit?
>
> A. Yes.
>
> Q. Specifically as to the issue of whether or not he advised Mr. Chrisman that his sentence was not a mandatory 85 percent?
>
> A. Yes.
>
> Q. What do you recall that conversation was?
>
> A. Mr. Henry had called me – he was not employed with the Public Defender at that time – he called me and stated that he understood that I was submitting an affidavit – or actually I had already submitted an affidavit which stated that I believed that Mr. Henry had not advised Mr. Chrisman of 85 percent. Mr. Henry told me that my memory was incorrect, that he in fact had advised Mr. Chrisman that it was an 85-percent crime.

*Id*. at pp. 235-36. Mr. McKesson speculated that Mr. Henry had said to Mr. Chrisman that he would not have been subject to the 85% requirement. *Id*. at p. 246. But Mr. McKesson's testimony is clear that Mr. Henry had not said what was told to Mr. Chrisman. *See id*.

The change in testimony for Messrs. Chrisman and McKesson forecloses habeas relief. The Respondent concedes that misadvice by counsel about the 85% requirement would render the plea involuntary. Evidentiary Hearing Transcript at p. 295 (July 13, 2005) (Respondent's closing argument). Such misadvice might also render the legal representation deficient. *See supra* p. 5. But Mr. Chrisman's theory at the evidentiary hearing did not involve erroneous advice about the 85% requirement. Instead, Mr. Chrisman based his claim on an alleged remark by Mr. Henry that parole would be "likely" upon completion of the Drug Offender Work Camp program. Evidentiary Hearing Transcript at pp. 70, 73-74, 120 (July 12, 2005).[7]

---

[7] At the evidentiary hearing, Mr. Chrisman was asked about the timing of Mr. Henry's statement that the 85% requirement was inapplicable. Evidentiary Hearing Transcript at pp. 70-71 (July 12, 2005). The response was: "He actually – when he told me that if I take this DOWC program and successfully complete it I would then likely make parole, that's telling me that I would not have to serve 85 percent." *Id*. Mr. Chrisman's attorney later asked what Mr. Henry had said about the Drug Offender Work Camp. *Id*. at pp. 73-74. The ensuing exchange was:

> A.   He told me I would then likely make parole if I completed it.
>
> Q.   That it would take a year?
>
> A.   Yes, it is a 12-month program.
>
> Q.   Implicit in that was that you would not do 85 percent of the ten years?
>
> A.   Correct.
>
> Q.   Did you specifically ask him or did he specifically tell you that you would not do the 85 percent on that day?
>
> A.   No, he – I don't recall if he specifically told me I would not have to do 85 percent.
>
>      But telling me that if I complete the DOWC program within a year – I mean,

The outcome turns on the difference in versions, as "courts have recognized a distinction between failure to inform [a defendant about parole eligibility] and giving misinformation."[8] Misadvice about parole eligibility could arguably render a plea involuntary and the legal assistance ineffective. *See supra* p. 5. But the same is not true when the court and defense counsel simply fail to advise the defendant about restrictions on parole eligibility. *See supra* pp. 5-6.

Mr. Chrisman alleges that he had been led to believe that he would be eligible for parole in one year if he completed the Drug Offender Work Camp program. *See supra* p. 10 & note 7. But at the evidentiary hearing, he acknowledged that this conclusion represented an assumption on his part because he knew that the Drug Offender Work Camp program would last one year. Evidentiary Hearing Transcript at pp. 73-74 (July 12, 2005); *see supra*

---

> it is a 12-month program – I would then likely make parole, is telling me that I would not have to serve 85 percent, as far as how my mind thinks.

*Id*. On cross-examination, Mr. Chrisman repeated that he was led to believe that he would not have to satisfy the 85% requirement if he successfully completed the Drug Offender Work Camp program. *Id*. at p. 120.

[8]   *Czere v. Butler*, 833 F.2d 59, 63 n.6 (5th Cir. 1987); *see Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir. 1979) ("though parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel"); *see also Cepulonis v. Ponte*, 699 F.2d 573, 577 (1st Cir. 1983) ("*mis*information may be more vulnerable to constitutional challenge than mere lack of information" (citation omitted; emphasis in original)).

note 7. The alleged assumption, while unfortunate, cannot be attributed to an erroneous statement on Mr. Henry's part.[9]

According to the Petitioner, Mr. Henry had also said that parole would likely be granted upon completion of the program. *See supra* p. 10 & note 7. Mr. Henry insists that

---

[9] All of the evidence presented at the hearing indicates that one could participate in the Drug Offender Work Camp even when he is subject to the 85% requirement. For example, Mr. McKesson testified:

> Q.   Is Drug Offender Work Camp a program offered by DOC where you do a 12-month program and then you are up for parole if you finish that program?
>
> A.   It is not quite that way. My understanding in talking to the Department of Corrections is that the way the Drug Offender Work program works is if it had been a non 85-percent offense, then you get on a list; and once you are accepted into the program, then that generally takes 12 months to complete the program. Once you successfully complete the program, then you are eligible for early release, because they would suspend the balance of your time.
>
>       But if it is an 85-percent crime, my understanding from the Department of Corrections is that they don't even put you into the program until you are about approximately two years from completing the 85 percent and then you go into the program. Their estimation is, based upon the waiting time and the completion time, that your completion of it, the Drug Offender Work Camp, should be about the same time that you are eligible for parole.

Evidentiary Hearing Transcript at p. 242 (July 12, 2005). Similarly, Mr. Henry and the prosecutor stated that they had agreed to the proposed recommendation of drug treatment in order to help Mr. Chrisman while he was in prison. *Id*. at pp. 160-61, 204. Both men denied any relationship between the recommendation and the possibility of release before Mr. Chrisman had served 85% of his sentence. *Id*. at pp. 162, 184-85, 204. Indeed, participation in the Drug Offender Work Camp would not have automatically resulted in release. Dr. Philip Holley and Mr. Dennis Brewster point out: "Upon completion of the DOWC program, inmates may be (1) discharged to the streets, (2) released through Probation and Parole, or (3) transferred to another ODOC facility to serve additional time." Holley & Brewster, *A Program Description and Development of a Program Evaluation Model for the Drug Offender Work Camp - Charles E. "Bill" Johnson Correctional Center* at p. 13 (Sept. 12, 1997) (available at http://webpages.charter.net/dbrews/BJCC_jou3.htm).

he had explained that even if Mr. Chrisman took the program, he would need to complete 85% of the sentence before he became eligible for parole. Evidentiary Hearing Transcript at p. 186 (July 12, 2005). Mr. Chrisman criticizes this advice as misleading, but not as incorrect. He believes that he was misled because the program lasted one year and he assumed that he could enroll immediately. *See supra* note 7. But this assumption had not been expressed by Mr. Henry. Mr. Chrisman's unilateral assumption would not justify habeas relief even if the confusion had resulted from a lack of communication with his counsel.

Even if the recommendation of placement in Drug Offender Work Camp had contributed to Mr. Chrisman's confusion, the plea would not have become involuntary based on his unilateral expectation of parole. *See Worthen v. Meachum*, 842 F.2d 1179, 1184 (10th Cir. 1988) ("A defendant's expectation of parole that is based on a bad guess by his attorney does not render a plea involuntary." (citations omitted)).[10] And, as noted above, an attorney's failure to inform an accused of parole ineligibility does not render the legal assistance ineffective or the plea involuntary. *See supra* pp. 5-6. Thus, Mr. Henry's alleged failure to tell Mr. Chrisman about the 85% requirement was not objectively unreasonable and did not invalidate the plea.

---

[10] In *Gilbert v. Scott*, 941 F.2d 1065, 1067 (10th Cir. 1991), the Tenth Circuit Court of Appeals stated that the Supreme Court had implicitly overruled *Worthen* on other grounds. *See Coleman v. Thompson*, 501 U.S. 722 (1991).

The resulting question is whether the attorneys had improperly handled the motion to withdraw the plea. *See supra* p. 7 & note 3. Mr. McKesson unquestionably argued in the *certiorari* appeal that Mr. Chrisman had been misled about the 85% requirement. Respondent's Evidentiary Hearing Exhibit 26 at p. 3 (July 12, 2005). But, Mr. Chrisman alleged in his briefs that the attorneys had failed to include such an allegation in the motion to withdraw the plea or in an amendment to this motion. *E.g.*, Reply to Respondent's Response and Supplemental Habeas Claim with a Colorable Showing of Factual Innocence at p. 8 (Nov. 19, 2004). At the evidentiary hearing, Mr. Chrisman added an allegation that he had been told by Mr. McKesson that the 85% requirement was inapplicable. *See infra* p. 15. The Court should reject these allegations, as the attorneys had acted reasonably in handling the motion to withdraw and the alleged omission was not prejudicial.

Mr. Chrisman contends in part that counsel should have added an allegation based on misadvice by Mr. Henry about the 85% requirement. *See supra* p. 7. But, as discussed above, Mr. Chrisman acknowledged at the evidentiary hearing that he could not remember whether Mr. Henry had told him that the 85% requirement was inapplicable. *See supra* p. 8 & note 5. Instead, Mr. Chrisman testified that Mr. Henry had given unwise advice about the likelihood of parole upon completion of the Drug Offender Work Camp. *See supra* p. 8. As discussed more fully above, this account would not invalidate the plea based on grounds involving voluntariness or ineffective assistance of trial counsel. *See supra* pp. 5-6, 12-13. Pursuit of this theory in the state district court would have been futile, as the judge would not

have allowed withdrawal even if counsel had challenged the plea based on Mr. Henry's advice.

At the evidentiary hearing, Mr. Chrisman added an allegation that Mr. McKesson had said that the 85% requirement was inapplicable. Evidentiary Hearing Transcript at pp. 83, 131-32 (July 12, 2005). According to Mr. Chrisman, this account reflected ineffectiveness on the part of Mr. McKesson. Mr. Chrisman's account is not credible, and the Court should reject the claim on three factual grounds.

First, in the numerous pleadings preceding the evidentiary hearing, Mr. Chrisman had never accused Mr. McKesson of a misrepresentation about the applicability of the 85% requirement.[11]

---

[11] The new account is inconsistent with Mr. Chrisman's prior pleadings. For example, in his opening brief, Mr. Chrisman said:

> Five to ten minutes prior to the hearing [on the motion to withdraw the plea], Mr. McKesson made his introduction and consulted with petitioner. Petitioner informed Mr. McKesson that Mr. Henry had assured petitioner that he would *not* have to serve 85% of the sentence under truth in sentencing. Petitioner further informed Mr. McKesson that had he known that he would be required to serve 85% of the sentence, he would not have accepted the offer.

Brief in Support of Habeas Corpus at p. 7 (Sept. 29, 2004) (emphasis in original); *see also* Respondent's Evidentiary Hearing Exhibit 29 at pp. 7-8 (July 12, 2005) (similar statement by Mr. Chrisman in his application for post-conviction relief in state district court); Respondent's Evidentiary Hearing Exhibit 33 at p. 7 (July 12, 2005) (similar statement by Mr. Chrisman in a petition in error to the Oklahoma Court of Criminal Appeals). The statement in the opening brief suggests that Mr. Chrisman had already discovered the applicability of the 85% requirement when he met Mr. McKesson.

Second, at the hearing on the motion to withdraw, Mr. Chrisman interjected that Mr. Henry had said that he would try to arrange a deal which would avoid the 85% requirement. After Mr. McKesson said that he had "[n]othing else" to present, Mr. Chrisman added:

> Mr. Henry did say something about he was going to fix the deal to where it doesn't fall under the 85 percent or whatever. It wasn't established when the deal was made, but I don't know if that's relevant right now or not since you're talking about the deal.

Respondent's Evidentiary Hearing Exhibit 18 at p. 11 (July 12, 2005). This remark would have made little sense if he had just been told by Mr. McKesson that the 85% requirement was inapplicable even without such a deal.

Finally, Mr. McKesson was credible at the evidentiary hearing, and his version of events is consistent with the written record. Mr. Chrisman's version was not. For example, Mr. Chrisman insisted in the evidentiary hearing that Mr. McKesson had stated in the hearing on the motion to withdraw the plea that the 85% requirement did not apply. *See* Evidentiary Hearing Transcript at pp. 82-83 (July 12, 2005). But in his opening brief, Mr. Chrisman alleged that in the hearing itself, Mr. McKesson had argued "in great detail" that: "(1) [t]he trial court's failure to advise petitioner that he would be required to serve 85% of the sentence rendered his plea involuntary; and (2) petitioner's plea was involuntarily entered based upon counsel's erroneous advice that petitioner would not be required to serve 85% of the sentence." Brief in Support of Habeas Corpus at p. 7 (Sept. 29, 2004). One can hardly imagine Mr. McKesson simultaneously assuring his client that the 85% requirement did not apply and arguing to the trial judge that the same advice by Mr. Henry had been erroneous.

In contrast, Mr. McKesson's account is believable and consistent with all of the documentary evidence.

Based on the three reasons, the Court should find that Mr. McKesson had not told Mr. Chrisman that the 85% requirement was inapplicable.

II.     Claims Involving the Trial Court's Inquiry into Voluntariness

Mr. Chrisman also claims that the trial court had failed to ensure voluntariness of the plea. Brief in Support of Habeas Corpus at pp. 12-13 (Sept. 29, 2004). This claim is invalid.

The federal constitution requires an affirmative showing that the plea was voluntary. *See Sena v. Romero*, 617 F.2d 579, 581 (10th Cir. 1980). But the Supreme Court has not mandated any particular procedure for this purpose. *See Lansinger v. Crisps*, 403 F. Supp. 928, 930 (W.D. Okla. 1975) (stating that "[*Boykin v. Alabama*, 395 U.S. 238 (1969)] does not mandate that any particular procedure be adopted by the states to satisfy its requirements concerning the arraignment record." (citation omitted)). The Western District of Oklahoma has held that the constitutional requirement can be satisfied through a "[s]ummary of [f]acts" form reflecting full disclosure to the accused and voluntariness of his plea. *Lansinger v. Crisps*, 403 F. Supp. 928, 929-30 (W.D. Okla. 1975); *see also Hoffman v. Young*, 23 Fed. Appx. 885, 887 (10th Cir. Oct. 12, 2001) (unpublished op.).[12]

---

[12]   In *Hoffman v. Young*, the Tenth Circuit Court of Appeals stated:

> Although a transcript is of great value in determining whether a guilty plea is knowing and voluntary, it is not the exclusive means. In some circumstances, reliance upon other documentary evidence such as the questions and answers to a form may be sufficient to make that determination.

Mr. Henry provided the trial judge with a form, stating that Mr. Chrisman had not been promised anything for his plea and that the plea had been based on his own free will and without coercion. Respondent's Evidentiary Hearing Exhibit 12 (July 12, 2005). The form bore Mr. Chrisman's signature and Mr. Henry certified that the answers had been supplied by the Petitioner. *Id*.

In the evidentiary hearing, Mr. Chrisman did not say whether he had been asked about the form by the state district judge.[13] But Mr. Henry stated that he had reviewed the entire form with Mr. Chrisman to obtain his answers. Evidentiary Hearing Transcript at p. 163 (July 12, 2005). Mr. Chrisman never addressed whether he had reviewed the form with Mr. Henry. But Mr. Chrisman admitted that he could see what Mr. Henry was writing when he completed the form. *Id.* at 116. The state trial judge was entitled to rely on the representations by Mr. Henry, in the form itself, that he had read the questions to Mr. Chrisman and obtained his answers. *See Bradshaw v. Stumpf*, ___ U.S. ___, 125 S. Ct. 2398, 2406 (2005) ("Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.").

*supra* pp. 5-6.

---

*Hoffman v. Young*, 23 Fed. Appx. at 887 (citation omitted).

[13]   In his opening brief, Mr. Chrisman stated that the trial judge had not read the form aloud prior to the plea. Brief in Support of Habeas Corpus at p. 12 (Sept. 29, 2004). But in direct examination at the evidentiary hearing, Mr. Chrisman's attorney stated: "You [Mr. Chrisman] went through the forms with the Judge." Evidentiary Hearing Transcript at p. 79 (July 12, 2005). Mr. Chrisman did not respond to this remark. *See id*.

The state appellate   Mr. Chrisman contends that the form does not reflect disclosure of the need to serve 85% of his sentence before he would become eligible for parole. Brief in Support of Habeas Corpus at p. 11 (Sept. 29, 2004). But as discussed above, the plea would have remained valid even if Mr. Chrisman had not been told of the restriction on parole eligibility. *See* court reviewed the record at the plea proceedings and an evidentiary hearing on the motion for leave to withdraw the plea, concluding that the plea was voluntary. Summary Opinion Denying Certiorari, *Chrisman v. State of Oklahoma*, Case No. C-2002-412, slip op. at 2 (Okla. Crim. App. Mar. 25, 2003) (unpublished op.). This conclusion was not contrary to or an unreasonable application of Supreme Court precedent, and the Court should reject Mr. Chrisman's habeas claim.

## Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends denial of the petition for a writ of habeas corpus.

The Petitioner can object to this report and recommendation. To do so, Mr. Chrisman must file an objection with the Clerk of this Court by September 20, 2005. *See* W.D. Okla. LCvR 72.1(a). The failure to timely object would foreclose appellate review of the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## Status of the Referral

The referral to the undersigned is terminated.

Entered this 30th day of August, 2005.

_Robert E. Bacharach_
Robert E. Bacharach
United States Magistrate Judge